IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAMONA LINDER, | ) | CASE NO. 1:17 CV 1855 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION &** |
| SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Ramona Linder under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2]  The Commissioner has answered[3] and filed the transcript of the administrative record.[4]  Pursuant to my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]  They have participated in a telephonic oral argument.[10]

---

[1] ECF No. 12. The parties have consented to my exercise of jurisdiction.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 10.
[5] ECF No. 6.
[6] ECF No. 13.
[7] ECF No. 18 (Commissioner's brief); ECF No. 17 (Linder's brief).
[8] ECF No. 18, Attachment 1 (Commissioner's charts); ECF No. 17, Attachment 1 (Linder's charts).
[9] ECF No. 16 (Linder's fact sheet).
[10] ECF No. 20.

## Facts

### A.  Background facts and decision of the Administrative Law Judge ("ALJ")

As Linder aptly states in her brief, the procedural history of this case is "protracted."[11]  Linder applied for supplemental security income in November 2007.  Since that time, her application has undergone three Appeals Council remands and four hearings.[12]  At the first and third hearings, medical experts testified as to Linder's limitations.[13]

Linder, who was 48 years old at the time of the fourth administrative hearing,[14] has a high school education.[15]  Her past relevant employment history includes work as a mail carrier.[16]

The ALJ, whose decision became the final decision of the Commissioner, found that Linder had the following severe impairments: cervical degenerative disc disease and spondylosis with radiculopathy; right shoulder degenerative disc disease, status post arthroscopic surgical procedures; bilateral carpal tunnel syndrome; left hip greater trochanteric bursitis and iliotibial band syndrome; depressive disorder; anxiety-related disorders; and borderline personality disorder.[17]

---

[11] ECF No. 17 at 1.
[12] *Id.* at 1-2.
[13] ECF No. 10, Transcript ("Tr.") at 36.
[14] *Id.* at 62.
[15] *Id.*
[16] *Id.* at 37.
[17] *Id.* at 23.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ found Linder had the residual functional capacity ("RFC") to perform light work as defined in the regulations, with additional limitations.[18] The ALJ decided that this residual functional capacity precluded Linder from performing her past relevant work as a mail carrier.[19]

Based on testimony by the vocational expert at the hearing, the ALJ determined that a significant number of jobs existed nationally that Linder could perform.[20] The ALJ, therefore, found Linder not under a disability.[21]

## B.    Issues on judicial review

Linder asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Linder presents the following issue for judicial review:

- Whether the ALJ's failure to properly evaluate and weigh the opinions of plaintiff's treating physicians and social security's own medical experts resulted in a residual functional capacity determination that is not supported by substantial evidence.[22]

For the reasons that follow, I will conclude that the ALJ's finding of no disability lacks substantial evidence and, therefore, must be reversed and remanded for further administrative proceedings.

---

[18] *Id.* at 26.
[19] *Id.* at 37.
[20] *Id.*
[21] *Id.* at 39.
[22] ECF No. 17 at 1.

# Analysis

## A.  Standards of review

### 1.  *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions.  However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence.  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[23]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[24] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[25]

---

[23] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).
[24] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).
[25] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[26] emphasized that the regulations require two distinct analyses in evaluating the opinions of treating sources.[27] The *Gayheart* decision directed that the ALJ must first determine if the opinion must receive controlling weight as well-supported by clinical and laboratory techniques and as not inconsistent with other evidence in the administrative record.[28] If the ALJ decides not to give the opinion controlling weight, then a rebuttable presumption exists that the treating physician's opinion should receive great deference.[29] This presumption may be rebutted by application of the factors set forth in 20 C.F.R. §§ 416.927(c)(2)(i)-(ii), (3)-(6).[30] The Court cautioned against collapsing these two distinct analyses into one.[31]

Despite the seemingly clear mandate of *Gayheart*, the Sixth Circuit in later decisions has adopted an approach that permits these two separate analyses to be merged into one so long as the ALJ states "good reasons" for the weight assigned applying the regulatory factors governing each analytical step.[32] Also, despite the reality that a unified

---

[26] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).
[27] *Id.* at 375-76.
[28] *Id.* at 376.
[29] *Rogers*, 486 F.3d at 242.
[30] *Gayheart*, 710 F.3d at 376.
[31] *Id.*
[32] *E.g., Biestek v. Comm. of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).

statement of these "good reasons" greatly enhances meaningful judicial review,[33] some authority exists for looking outside the unified statement for analysis of the weight assigned to a treating source's opinion.[34] Going beyond the reasons stated in the unified statement takes the Court in the hazy gray area where the sirens of *de novo* review and *post hoc* rationalization reside. A reviewing district court must avoid both. An ALJ cannot avoid reversal by merely citing exhibits in the record that might support her findings without discussing the content of those exhibits and explaining how that content provides support.[35] Nor can counsel for the Commissioner save a decision from reversal by citing to evidence in the record not cited and adequately discussed by the ALJ.[36] It is for the ALJ, not the court or Commissioner's counsel, to "build a logical bridge from the evidence to the conclusion."[37] "Put simply, . . . there must be some effort . . . to explain why it is the treating physician's conclusion that gets the short end of the stick."[38]

---

[33] *Smith v. Comm. of Soc. Sec.*, No. 5:13cv870, 2104WL1944247, **7-8 (N.D. Ohio May 14, 2014).

[34] *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001).

[35] *Smith v. Comm'r of Soc. Sec.*, No. 5:13 CV 870, 2104 WL 1944247, at *7 (N.D. Ohio May 14, 2014).

[36] *Sharp v. Comm'r of Soc. Sec.*, No. 1:14-cv-523, 2015 WL 3545251 (S.D. Ohio June 4, 2015) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014)), *report and recommendation adopted by* 2015 WL 3952331 (S.D. Ohio June 29, 2015).

[37] *Hale v. Colvin*, No. 3:13cv182, 2014 WL 868124, *8 (S.D. Ohio March 5, 2014).

[38] *Friend* v. *Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

### 3. *Non-examining state agency consultants*

ALJs must consider opinions on the nature and severity of impairments offered by state agency consultants.[39] While the ALJ is not bound by the findings made by these non-examining physicians and psychologists, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions."[40] The factors set forth in the regulations that are to be considered when evaluating the opinions of treating and other sources also apply to opinions rendered by non-examining sources.[41]

### B. Application of standards

This case concerns a challenge to the RFC as it involves Linder's exertional and postural limitations. The ALJ, contrary to the opinions of two treating sources and two testifying medical experts, found Linder capable of light work with additional limitations.[42] Her mental impairments are not at issue in this appeal. Multiple errors abound in the ALJ's treatment of the medical opinion evidence of record.

---

[39] *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY RULING 96-6P, POLICY INTERPRETATION RULING TITLES II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT BY STATE AGENCY MEDICAL AND PSYCHOLOGICAL CONSULTANTS AND OTHER PROGRAM PHYSICIANS AND PSYCHOLOGISTS AT THE ADMINISTRATIVE LAW JUDGE AND APPEALS COUNCIL LEVELS OF ADMINISTRATIVE REVIEW; MEDICAL EQUIVALENCE, 1996 WL 374180 (1996).

[40] *Id.*

[41] *Id.*

[42] Tr. at 26, 35-36.

## 1.    *Treating Sources*

The ALJ assigned little weight to the opinions of Drs. Parma and Warren.[43]  The ALJ faulted Dr. Parma's opinion, in a single sentence unsupported by any discussion or citation to any evidence in the record, as "inconsistent with the objective evidence."[44]  Similarly, and again in a single, unsupported sentence, the ALJ discounted the opinions of Dr. Warren on the grounds that "many of the limitations are not supported by the objective medical evidence."[45]

At oral argument, the Commissioner conceded that such statements alone would be insufficient under the regulations and the law in this circuit.  However, the Commissioner points to a separate, independent paragraph discussing the medical evidence of record,[46] which she asks the court to consider in evaluating the ALJ's analysis of the treating source opinions as part of a "holistic approach" to judicial review.[47]

First, this paragraph does not refer back to the ALJ's discussion of Drs. Parma and Warren or their opinions.  But even giving the Commissioner the benefit of the doubt and adopting a holistic approach to tie this paragraph back to the ALJ's analysis of the treating source evidence does not remedy the ALJ's errors here.  In the paragraph cited by the Commissioner, the ALJ impermissibly "cherry-picked" the record to selectively include

---

[43] *Id.* at 35-36.
[44] *Id.* at 35.
[45] *Id.* at 35-36.
[46] *Id.* at 36.
[47] ECF No. 18 at 9-10.

only the evidence supporting his conclusions while ignoring contrary evidence. For example, the ALJ stated, "Additional diagnostic studies document the presence of only mild to moderate joint degeneration despite the claimant's complaints of extensive physical pain and limitation."[48] But a treatment note interpreting the same diagnostic images concluded that "bilateral MRI studies [] do indeed show evidence of impingement syndrome involving the tip of the acromion and the rotator cuff tearing of supraspinatus partially at that side with fluid in the subacromial space" and noted that Linder had two torn rotator cuffs.[49] The ALJ similarly ignored contrary evidence in seven other exhibits cited in this paragraph.

The ALJ failed to provide good reasons for discounting the opinions of two of Linder's treating physicians and improperly ignored contrary evidence. Therefore, remand is required.

## 2. *Testifying medical experts*

The Commissioner asserts that the ALJ is "not required to explain the reasons for rejecting a consulting doctor's opinion in the same manner" as that required of treating sources.[50] While that may be true, the ALJ does not get a free pass to reject a consulting

---

[48] *Id.* at 36 (citations omitted).
[49] *Id.* at 1184.
[50] ECF No. 18 at 12.

expert's opinion out of hand – these opinions must be weighed based on the same factors as treating sources.[51]

The ALJ assigned little weight to the opinions of the medical experts who testified at the first and third hearings because these experts ostensibly relied largely on the opinions of Drs. Parma and Warren, which the ALJ already determined to be unsupported by their treatment notes.[52]  First, as shown above, the ALJ's analysis of the opinions of Drs. Parma and Warren was flawed; therefore, his disregard for the testifying medical experts because of their reliance on these opinions is based on faulty reasoning.  Second, a review of the transcripts of the testimony of Drs. Schweider and Brahms, the testifying medical experts, shows that the ALJ mischaracterized their testimony – both based their opinions of Linder's limitations on their review of the medical evidence in the record.[53]

The ALJ walked away from four medical source opinions in the record to formulate Linder's RFC and failed to articulate good reasons (as to the treating sources) or sufficient explanation of the factors to be weighed in evaluating medical source opinions (as to the testifying medical experts) in doing so.  "Given the existing record, this Court can only deduce that the ALJ's RFC finding was based on the ALJ's own interpretation of Plaintiff's capabilities, not on the evidence."[54]  As a result, remand is required.

---

[51] *Lewis v. Astrue*, No. 3:11cv00022, 2012 WL 368050, *5 (Feb. 3, 2012), *report and recommendation adopted in part and rejected in part by* 2012 WL 931487 (rejecting portion recommending remand and awarding benefits based on the grids).
[52] *Id.* at 36.
[53] *Id.* at 119-21, 198-200.
[54] *Lewis*, 2012 WL 368050, at *8.

**Conclusion**

The finding of the Commissioner that Linder had no disability lacks substantial evidence. Accordingly, the decision of the Commissioner denying Linder supplemental security income is reversed and remanded for proper analysis and consideration of the medical opinion evidence of record in formulating Linder's RFC.

IT IS SO ORDERED.


Dated: September 18, 2018                    <u>s/ William H. Baughman, Jr.</u>
                                                 United States Magistrate Judge